UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

Eastern District of Kentucky
**FILED**
AUG 17 2022
AT LONDON
ROBERT R CARR
CLERK U S DISTRICT COURT

UNITED STATES OF AMERICA

V.                                        INDICTMENT NO. 7:22-CR-012-REW

BLACK DIAMOND COAL, LLC and
WALTER PERKINS

\* \* \* \* \*

THE GRAND JURY CHARGES:

### COUNT 1
### 30 U.S.C. § 820(d)

A.  At all times relevant to this Indictment:

1.  **BLACK DIAMOND COAL, LLC** was the Kentucky corporate operator of the Mine #1 underground coal mine in Floyd County, Kentucky. As defined in Title 30, United States Code, Section 802(d), the Mine #1 was subject to the provisions of the Federal Mine Safety and Health Act of 1977, as amended, under 30 U.S.C. § 803, in that **BLACK DIAMOND COAL, LLC,** utilized equipment manufactured outside the Commonwealth of Kentucky that entered into or affected interstate commerce.

2.  **WALTER PERKINS** was the certified dust-sampler at the Mine #1. He was an agent as defined in 30 U.S.C. §§ 802(e) & 820(c).

3.     **BLACK DIAMOND COAL, LLC** acted through its agents and employees, including **WALTER PERKINS** and other miners, who acted within the scope of their agency and employment for the benefit, at least in part, of **BLACK DIAMOND COAL, LLC**.

4.     In order to protect the mining industry's "most precious resource – the miner," Congress passed the Federal Mine Safety and Health Act of 1977, as amended by the MINER Act of 2006. A stated purpose of the Mine Act was to provide working conditions in underground coal mines sufficiently free of respirable dust concentrations so as to permit each miner the opportunity to work underground during the period of his or her entire adult life without incurring any disability from "black lung" and silicosis.

5.     Black lung is an occupational lung disease typically not incurred by the general population. When coal dust particles enter the lungs, they irritate the delicate lung tissue and eventually form massive impenetrable fibrous tissue that significantly restricts the lung's functions and causes scarring, which can lead to lung failure and death. Once black lung develops, it cannot be reversed. There are no specific treatments to cure black lung. The chronic effects of black lung may progress even after the miners are no longer exposed to respirable coal dust resulting in increasing disability and death.

6.     Lowering the concentration of respirable coal mine dust in the air that miners breathe is the only means of preventing diseases black lung. Major sources of dust generation in continuous mining operations are continuous mining machines, shuttle

cars and roof bolters. Major control methods for dust in mining operations are water and ventilation control systems.

7. MSHA's mandatory health and safety standards require mining companies, or "operators" to monitor the respirable coal dust in their mines every quarter on consecutive normal production shifts until 15 valid representative samples are taken. 30 C.F.R. § 70.208. This monitoring is also called sampling.

8. Sampling must be conducted by a certified person. 30 C.F.R. § 70.202(a). A certified person has taken a class and passed a test. 30 C.F.R. § 70.202(b). Sampling is done using a continuous personal dust monitor (or CPDM). 30 C.F.R. § 70.201(a). CPDMs are sometimes referred to as "dust pumps." CPDMs must be worn by miners performing specific jobs at specific locations. 30 C.F.R. § 70.208 (designated occupations) & 30 C.F.R. § 70.209 (designated areas).

9. Each CPDM must be worn and operated by the miners being sampled for a set period of time, portal-to-portal. 30 C.F.R. § 70.201(c). Portal-to-portal sampling means the miners must continue to wear the pump, and continue to sample, the entire time they are underground. 30 C.F.R. § 70.201(c).

10. CPDMs must run the entire sampling period. 30 C.F.R. § 70.201(c). The certified person who is performing the sampling must make certain checks to ensure the CPDM is working properly. 30 C.F.R. § 70.205(c). Each CPDM must remain with the miner who is being sampled. 30 C.F.R. § 70.208(b).

11. A sample is only valid if the operator mined a normal production shift of at least 80 percent of the average production of the most recent 30 production shifts. 30 C.F.R. § 70.2.

12. The operator is required to maintain the average concentration of respirable dust in the mine atmosphere during each shift not to exceed 1.5 milligrams of dust per cubic meter of air as measured by the CPDM. 30 C.F.R. § 70.100(a).

13. The certified person must validate, certify, and transmit electronically to MSHA within 24 hours after the end of the sampling shift all sample data file information collected and stored in the CPDM, including the sampling status conditions encountered when sampling. 30 C.F.R. § 70.210(f).

### B. The Offense

14. On or about October 8, 2020, in Floyd County, in the Eastern District of Kentucky,

**BLACK DIAMOND COAL, LLC,**

in a matter within the jurisdiction of the United States Department of Labor, Mine Safety and Health Administration, willfully violated the mandatory health and safety standards found in 30 C.F.R. Part 70 by failing to keep a CPDM on the designated miner portal-to-portal, but instead running the CPDM on the surface in clean air, all in violation of 30 U.S.C. § 820(d) and 30 C.F.R. Part 70.

### COUNT 2
### 30 U.S.C. § 820(f)

15. Paragraphs 1-13 are incorporated herein by reference.

16. From on or about October 6, 2020, and continuing through on or about October 7, 2020, in Floyd County, in the Eastern District of Kentucky,

**BLACK DIAMOND COAL, LLC,**

in a matter within the jurisdiction of the United States Department of Labor, Mine Safety and Health Administration, did knowingly make and certify false statements and representations in its sampling data electronically submitted to MSHA, in that it knowingly submitted CPDM data representing valid shift samples when in fact, the CPDM was not worn by the designated miner portal-to-portal as required by the regulations, all in violation of 30 U.S.C. § 820(f).

## COUNT 3
## 30 U.S.C. § 820(c)

17. Paragraphs 1-13 are incorporated herein by reference.

18. On or about October 8, 2020, in Floyd County, in the Eastern District of Kentucky,

**WALTER PERKINS,**

while serving as the certified person in charge of sampling, in a matter within the jurisdiction of the United States Department of Labor, Mine Safety and Health Administration, knowingly violated the mandatory health and safety standards found in 30 C.F.R. Part 70 by failing to keep a CPDM on the designated miner portal-to-portal but instead running the CPDM on the surface in clean air, all in violation of 30 U.S.C. § 820(c) and 30 C.F.R. Part 70.

## COUNT 4
## 18 U.S.C. § 1001

19. Paragraphs 1-13 are incorporated herein by reference.

20. On or about October 8, 2020, in Floyd County, in the Eastern District of Kentucky,

### WALTER PERKINS,

in a matter within the jurisdiction of the executive branch of government of the United States, specifically the Department of Labor, Mine Safety and Health Administration, did willfully and knowingly make and cause to be made a material false, fictitious, and fraudulent statement and representation, to wit: he told a federal certified mine inspector investigating the operations at Mine # 1 that he had assigned the CPDM to the miner operator, but that the pump had a malfunction when in truth and in fact he knew that he never gave the CPDM to the miner operator and the CPDM did not have any malfunctions, all in violation of 18 U.S.C. § 1001(a)(2).

## COUNT 5
## 18 U.S.C. § 1001

21. Paragraphs 1-13 are incorporated herein by reference.

22. On or about February 4, 2021, in Floyd County, in the Eastern District of Kentucky, and elsewhere,

### WALTER PERKINS,

in a matter within the jurisdiction of the executive branch of the government of the United States, specifically the Department of Labor, Mine Safety and Health

Administration, willfully and knowingly made and caused to be made a material false, fictitious, and fraudulent statement and representation to wit: he told a federal MSHA special investigator, when asked why the CPDM was running outside on October 8, 2020, that he had taken the CPDM in that morning but had "brought it right back out because it had quit. The miner man hollered at me, said that the pump went off and said diagnosis failure" and that he had been "having problems with it," when in truth and in fact **WALTER PERKINS** knew that he never gave the CPDM to the miner operator, the miner operator never yelled at him, and the CPDM did not have any malfunctions, in violation of 18 U.S.C. § 1001(a)(2).

**A TRUE BILL**

_____
**CARLTON S. SHIER, IV**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNT 1:** Not more than five years probation and/or a fine of not more than $250,000.00 or twice the gross gain or loss to a person other than defendant

**COUNT 2:** Not less than one year nor more than five years probation and/or a fine of not more than $200,000.000 or twice the gross gain or loss to a person other than defendant

**COUNT 3:** Not more than one year imprisonment and/or a fine of $250,000.00, and not more than one year supervised release

**COUNTS 4 & 5:** Not more than five years imprisonment and/or a fine of $250,000, and not more than three years supervised release

**PLUS:** Mandatory special assessment of $125 for Count 1 (organization misdemeanor), $400 for Count 2 (organization felony), $25 for Count 3 (individual misdemeanor), $100 for Counts 4 and 5 (individual felony).

**PLUS:** Restitution, if applicable.