UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

Eastern District of Kentucky
FILED
JAN 3 0 2023
At Pikeville
Robert R. Carr
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 7:22-CR-012-REW

UNITED STATES OF AMERICA     PLAINTIFF

V.     **BINDING PLEA AGREEMENT**

BLACK DIAMOND COAL, LLC     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 30 U.S.C. § 820(d) and Count 2 of the Indictment, charging a violation of 30 U.S.C. § 820(f). Pursuant to Rule 11(c)(1)(C), the United States and the Defendant agree that a total fine of $200,000.00 is the appropriate disposition of the case. Pursuant to Rule 11(c)(4), if the Court accepts this plea agreement, the agreed disposition will be included in the judgment.

2. The essential elements of Count 1 are:

   (a) Black Diamond Coal, LLC, was an operator of a coal mine;

   (b) Black Diamond Coal, LLC, willfully violated a mandatory health or safety standard under 30 C.F.R. Part 70.

The essential elements of Count 2 are:

   (a) Black Diamond Coal, LLC, knowingly,

   (b) made false statements, representations, or certifications;

>       (c) in its dust-sampling reports;
>
>       (d) and that the dust-sampling reports were required to be maintained under the Mine Act, 30 U.S.C. § 801, et seq.

3. As to Counts 1 and 2 of the Indictment, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

From August 1, 2018, to April 8, 2021, Black Diamond Coal, LLC, (Black Diamond) was the Kentucky corporate operator of the Mine #1 underground coal mine located in Floyd County, Kentucky in the Eastern District of Kentucky, and was subject to the provisions of the Federal Mine Safety and Health Act of 1977, in that Black Diamond utilized equipment manufactured outside of the Commonwealth of Kentucky that entered into or affected interstate commerce. Black Diamond was required to follow Mine Safety and Health Administration's (MSHA) mandatory health and safety standards to monitor the respirable coal dust in Mine #1 every quarter on consecutive normal production shifts until 15 valid representative samples were taken. This monitoring is known as "sampling." The sampling provides information to the operators and MSHA on the levels of respirable coal mine dust in the air that miners breathe.

Respirable coal dust sampling is required by MSHA to ensure that the levels of respirable coal dust in the mine are low enough that miners are not exposed to the risk of developing coal workers pneumoconiosis or "black lung." Black lung is caused by coal dust particles entering into the lungs and eventually forming massive impenetrable fibrous tissue that significantly restricts the lung's functions and causes scarring, which can lead

to lung failure and death. Once black lung develops, it cannot be reversed. There are no specific treatments to cure black lung. And the chronic effects of black lung may progress even after the miners are no longer exposed to respirable coal dust.

Sampling must be conducted by a certified person. 30 C.F.R. § 70.202(a). A certified person has taken a class taught by MSHA and passed a certification test. 30 C.F.R. § 70.202(b). Sampling is done using a device the size of cassette tape recorder called a continuous personal dust monitor (CPDM). Here is an example:





CPDMs are sometimes referred to as "dust pumps." CPDMs must be worn by miners performing specific jobs at specific locations. 30 C.F.R. § 70.208 (designated occupations) & 30 C.F.R. § 70.209 (designated locations). During the sampling period, each CPDM must be worn and operated by the miners being sampled for the entire time they are underground during their entire shift. 30 C.F.R. § 70.210(c). The certified person who is performing the sampling must make certain checks to ensure the CPDM is being worn and running. 30 C.F.R. § 205(c). Each CPDM must remain with the miner who is

3

being sampled. 30 C.F.R. § 70.208(b). The certified person must validate, certify, and transmit electronically to MSHA within 24 hours after the end of the shift all of the sample data file information collected and stored in the CPDM, including the sampling status conditions when sampling. 30 C.F.R. § 70.210(f).

If the average concentration of respirable coal dust in the mine atmosphere during the sampling exceeds 1.5 milligrams of dust per cubic meter of air as measured by the CPDM, MSHA will issue a citation to the operator. The operator is required by law to abate the violation and abatement could involve multiple actions including increasing air flow in the mine, increasing use of water sprays, adding curtains to direct air flow, or slowing down or even stopping the mining process to lower the levels of respirable coal dust.

On or about July 25, 2019, Walter Perkins, who was employed by Black Diamond, received training by MSHA in the dust-sampling process, and was given and passed a test on how to conduct dust-sampling. After attending the training and passing the test, Perkins was certified by MSHA to conduct respirable coal dust sampling as required under 30 C.F.R. Part 70. Thereafter, Black Diamond selected Perkins as its certified person to conduct the sampling at Mine #1. As the person in charge of dust sampling, Perkins was an agent of Black Diamond as defined by 30 U.S.C. § 802(c).

On October 8, 2020, Black Diamond was conducting its quarterly sampling. The sampling had started several days before, at least by October 6, 2020.

Black Diamond submitted the October 6, 2020 and October 7, 2020 electronic sampling data to MSHA. On those days, October 6 and 7, 2020, the pump should have been worn by the continuous miner machine operator or "miner man."

On the morning of October 8, 2020, MSHA inspectors arrived at the Mine #1 for an inspection under 30 U.S.C. § 803(a) and discovered a CPDM running on the surface in the first aid trailer.





Perkins, Black Diamond's agent and certified person, claimed that he had given the CPDM to the continuous miner machine operator, for the shift's sampling, but that the operator returned it to Perkins because the CPDM went off and had a fault.

Perkins never gave the CPDM to continuous miner machine operator and the device never faulted. A MSHA health specialist ran a diagnostic on the CPDM at the mine site that day and the device indicated no faults. Further, the CPDM indicated that the ambient temperature was in the 70s or 80s degrees Fahrenheit. Had the CPDM been underground, it would have reflected a significantly lower temperature. The CPDM also records tilt or movement and the device showed it had not been moved that day.

On or about October 6 and 7, 2020, Black Diamond, through Perkins and another certified dust sampler for Mine #1, submitted dust-sampling data to MSHA purporting to be valid dust sampling results. The sampling data submitted, however, did not show that any levels of dust had been recorded by the CPDM on those days. When MSHA inspectors interviewed the continuous mining machine operator, he explained that Perkins had not given him a CPDM to wear on October 6, 7, or 8, 2020. The miner was not aware that the dust sampling period had begun. The regulation at 30 C.F.R. § 70.210 requires mine operators to also maintain and post the results of respirable coal dust sampling at their mine sites, but when inspectors were there on October 8, 2020, none of the dust sampling results for October 2020 or before were posted.

4. The statutory punishment for Count 1 is not more than five years probation and/or a fine of not more than $250,000.00 or twice the gross gain or loss to a person other than the defendant. The statutory punishment for Count 2 is not less than one year, but not more than five years probation and/or a fine of not more than $500,000.00 or twice the gross gain or loss a person other than the defendant. A mandatory special assessment of $125.00 for Count 1 and a mandatory special assessment of $400.00 for Count 2 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the sentence.

5. The United States and the Defendant agree to the following specific sentence, which binds the Court upon acceptance of this plea agreement. For Count 1, the Defendant will pay a $100,000.00 fine, be placed on two years of probation, and pay a mandatory

special assessment of $125.00. For Count 2, the Defendant will pay a $100,000.00 fine, be placed on two years of probation, and pay a mandatory special assessment of $400.00. The terms of probation will run concurrently. The Defendant agrees, pursuant to 18 U.S.C. § 3663A(a)(3), to pay restitution in the amount of $400 per employee who worked at Mine #1 between October 6, 2020, and October 8, 2020, and who are not currently receiving employment or disability benefits that cover the costs of industry-accepted screenings or treatments for pneumoconiosis, silicosis, or similar mining related ailments. Any restitution will be due and payable at sentencing.

6. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

7. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office.

8. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time.

9. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

10. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

11. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this

Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER IV
UNITED STATES ATTORNEY

Date: 1/30/23    By: _____
Emily K. Greenfield
Assistant United States Attorney

Date: 1/30/23    _____
Jason Grover
Special Assistant United States Attorney

Date: 1/20/23    _____
Brandon Marshall
Attorney for Defendant and Authorized
Corporate Official
Black Diamond Coal, LLC
Defendant

10